[133   219]
[148   211]

# CITY OF SCRANTON v. LEWIS JONES.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY.

Argued February 27, 1890—Decided March 10, 1890.

A municipal claim for a sewer assessment filed by a city of the third class, under § 47, act of May 23, 1874, P. L. 259, describing the premises sought to be charged merely as "lot No. 21 in block 28, as laid out and numbered on the assessment map. . . . . on file in office of the city clerk," is insufficient and will be stricken off.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MC-COLLUM, JJ.

No. 279 January Term 1890, Sup. Ct.; court below, No. 574 June Term 1889, C. P.

On May 20, 1889, a scire facias was issued by the city of

Opinion of Court below.

Scranton against Lewis Jones, upon a municipal claim filed in the form following:

" Under the provisions of the several laws and ordinances relating to the same, the city of Scranton hereby files a claim for sewer assessment against all that certain piece or parcel of land, with the improvements thereon, situate in the Ninth ward of the city of Scranton, and bounded and described as follows, to wit: Being lot 21, in block 28, as laid out and numbered on the assessment map of the Ninth ward of Scranton on file in the office of the city clerk:

STATEMENT OF CLAIM.

| Owner or Reputed Owner. | Date of Assessm't. | For what purpose. | Amount. |
|---|---|---|---|
| LEWIS JONES. | Aug. 4th, 1886. | Main Sewer in 4th district. | $27.09. |

" The prothonotary of Lackawanna county is hereby requested to file the above claim as a lien against the above described property and against the said owner or reputed owner, and for the sums set forth in the above statement."

A rule having been granted on October 8, 1889, to show cause why the claim should not be stricken off, after argument, the following opinion was filed, ARCHBALD, P. J.:

The so-called statement of lien in this case amounts to no more than a claim of lien for an alleged "sewer assessment" against a certain—or rather uncertain—lot of land in the city of Scranton followed by this brief memorandum:

STATEMENT OF CLAIM.

| Owner or Reputed Owner. | Date of Assessm't. | For what purpose. | Amount. |
|---|---|---|---|
| LEWIS JONES. | Aug. 4th, 1886. | Main Sewer in 4th district. | $27.09. |

The whole substance of the claim it to be found in this memorandum. It is not even supported by an averment that a sewer has in fact been constructed or determined upon. It

seems to me you could as well expect that a copy of a note or book account should pass for a declaration, as that this memorandum should stand as a specification of lien.

The form of statement for a municipal lien is not, as in the case of mechanics' liens, presented by the statute: Act of May 23, 1874, §§ 36, 37 and 47; but it is provided that proceedings may be had thereon by scire facias, as in the case of mechanics' liens; and, as was said with regard to the somewhat similar act of April 16, 1846, § 10, in Philadelphia v. Sutter, 30 Pa. 55, "it is evident that the intention of the legislature in all these acts was to assimilate the security and collection of such municipal claims to those of mechanics and material men." If this be so, then substantially the same precision must be observed in the one case as the other. As was further said, in the case cited, "the whole proceeding is one of statutory creation, and the creditor who seeks to avail himself of it must bring his case within the letter and intention of the statutes." Enough must therefore be set forth in each case to establish a statutory liability.

The statement of lien must upon its face be self sustaining. "It is conceded on all hands" says Mr. Justice MITCHELL, in Philadelphia v. Richards, 124 Pa. 308, "that a lien upon a municipal claim for paving being of purely statutory creation, the claim must aver upon its face all the facts necessary to sustain its validity, and that unless it does so it may be summarily struck off by the court upon motion." It is not sufficient therefore merely to assert a claim of lien; enough must be set forth upon the record to show a lien in fact. It is in this respect that the statement before us is deficient; a claim is no doubt made, but not made out. Even conceding, if you will, that the nature and extent of the claim are indicated in the schedule of terms and figures quoted, it still remains after all a claim of lien and no more. The right to a lien against the property in question is nowhere made to appear. Upon what then, it may be asked, does the right to a lien, in such a case as the present, depend? An answer to this question will disclose what is wanting in the claim of lien before us.

The provisions of the law with regard to the construction of sewers in cities of the third class are to be found in the forty-seventh section of the act of May 23, 1874, and the

method of assessing properties beneficially affected by a sewer
also appears there.   The first step in this process is an ordi-
nance of the city councils providing for the division of the city
into sewer districts.   We do not need to consider in this con-
nection what must be the basis of such an ordinance, nor what
it shall contain.   The city must no doubt, upon a trial in court
on the merits, show a valid ordinance passed in due compliance
with all the requirements of the statute.   But these are merely
matters of evidence and do not have to be touched upon in the
claim : Philadelphia v. Richards, 124 Pa. 303.   But, as the
basis of a lien, the due passage of such an ordinance must be
averred, and the property against which the lien is filed must
in some way be shown to be affected thereby, and made subject
to assessments for main or local sewerage or both.

The next step is the assessing of the costs and expenses of
any sewer which has been determined upon.   The costs of a
main sewer may be assessed upon the lots and lands within the
sewer district where the work is to be done, (a) according to
the valuation of the same on the city duplicate, or (b) accord-
ing to benefits ; the costs of local sewerage may be assessed,
(a) upon the feet front of lots and lands by or through which
such portion of any local sewer shall pass, or (b) according to
the valuation of the same upon the duplicate aforesaid, or (c)
in proportion to benefits upon lots and lands benefited by such
local sewerage.   When the assessment for main or local sewer-
age is to be made according to benefits, five disinterested free-
holders are to be appointed as assessors, and when they have
made their assessment and reported the same to the city coun-
cils, public notice is required to be given, and opportunity
afforded for exceptions to such report.   Which of these meth-
ods shall be pursued in any given case, it is for the councils to
determine by ordinance.   But it is highly important to every
one who is called upon to defend himself against a claim for
sewer assessment, to know whether it is for main or local sew-
erage, and by which method such assessment has been laid
against his property.   Without such information what means
has he of deciding whether he has been duly assessed or not?
Moreover, if the lien furnishes nothing to show the basis of
the assessment, there is nothing by which its validity may be
tested, nor is a statutory liability made out.   The statement of

lien must therefore disclose the character of the assessment claimed, whether for main or local sewerage, and the method by which it has been assessed upon the property sought to be charged therewith.

The record must further show a claim which is due and enforceable at the time the scire facias issues to collect the same, and must give all the data as to debt, interest, and penalty, if any, by which a correct judgment may be made up. The time when the sewer assessments in any particular case shall be payable, is of course to be determined by the city councils. If the last clause of the forty-seventh section of the statute be constitutionally valid, about which it seems to me there may be some question, the councils may cause such assessments to be collected before the work is contracted for. But, however that may be, the time within which they have declared that the assessments shall be paid must somehow be made to appear. The mere fact that a claim of lien has been entered, determines nothing, because a lien is given from the time of the assessment regardless of the question of when it is payable. When, therefore, a recovery is sought upon the claim by scire facias, according to the provisions of the thirty-seventh section of the statute, the assessment must be due, and the claim of lien must show that it is. The claimant cannot go outside of the record, for it is by the face of the record that the writ must be sustained. Dependent upon the same fact, also, is the question of interest and penalty if any. Interest does not run from the date of the assessment, but from the time when it was due, nor does any penalty accrue until default has been made. It is an essential part, therefore, of the statement of the amount of the claim, that the time when the assessment was due be given, so that the right to these additions to the face of the assessment may be measured and determined.

It will not be controverted but that a sufficient description of the property against which the lien is filed shall be given. One of the first requisites of such description, is a statement of the county in which the land lies; and from the face of the lien, in order to meet the requirements of the statute, the land in question should appear to be within the county where the claim is filed. Judged by this, the present claim, as it stands, is fatally defective. It is nowhere suggested that the lot men-

Opinion of Court below.

tioned is in the county of Lackawanna, or even within the state. Where it is merely a matter of evidence, we will no doubt take judicial notice that the city of Scranton is situated within the limits of this county. But in a local action the description of the property is material, and must on its face establish the jurisdiction. I very much doubt whether, even after judgment upon the lien, a sheriff's sale upon any such description would convey title. But this is not all that may be said of the present description. The lot is given no locality—except that it is in the Ninth ward of the city of Scranton—other than by a lot and block number, upon a so-called assessment map of said ward, on file in the office of the city clerk. If this map were connected by anything in the claim, with an ordinance establishing a sewer district, this bare reference to it might perhaps be sufficient. Id certum est quod certum reddi potest. But the map is in no wise designated, except as an assessment map on file in the city clerk's office. It is possible that the present city authorities have an idea what map is thus referred to, but it is clear, that to the general public there is no certainty in the reference, nor anything by which legal rules can be made certain. How the map came where it is, or by what sanction it is made a standard, is not disclosed to us. Without this, the reference is ineffectual and conveys no information.

Even were this reference legally sufficient, we cannot commend such meagreness of description as the claim before us is convicted of. No boundaries to the lot are given, nor its dimensions, nor whether it is situated upon a street or alley. It seems doubtful to me whether we would allow a sheriff's sale of the defendant's property to proceed, without some if not all of these particulars being stated, and, if that be so, they would have to be in the lien in order to get into the levari facias, and from there into the sheriff's advertisement. We do not, of course, undertake to definitely decide this, but in the interest at least of careful practice it is commended to the attention of those concerned.

If the conclusions thus reached are sound, the present claim cannot stand. At its best estate, it fails to show the establishment of a sewer district embracing the property in question, or by what method the sewer assessment claimed was made or when it was due, and the description of the property is vague,

uncertain and insufficient. From beginning to end the statement is defective. As was said at the beginning, it is simply a claim of lien, with a bare memorandum of the extent and character of the claim. This does not satisfy the law, as we understand it. The rule to show cause is made absolute and the lien stricken off.

—Thereupon the plaintiff took this appeal, specifying that the court erred in making the rule absolute and striking off the claim.

*Mr. I. H. Burns,* for the appellant.

Counsel cited: Philadelphia v. Richards, 124 Pa. 309; Scranton City's App., 121 Pa. 108; Pusey v. Allegheny City, 98 Pa. 526.

*Mr. Jas. H. Torrey* (with him *Mr. Thos. F. Wells* and *Mr. J. Alton Davis*), for the appellee.

Counsel cited: Connellsville Bor. v. Gilmore, 15 W. N. 343; Philadelphia v. Richards, 124 Pa. 308; Philadelphia v. Dungan, 124 Pa. 52.

PER CURIAM:

The learned judge of the court below gave several reasons for striking off the sewer claim. It is sufficient for our purpose to refer to one. There was no adequate description of the premises sought to be charged. It is referred to as "lot No. 21 in block 28, as laid out and numbered on the assessment map of the Ninth ward of Scranton, on file in the office of the city clerk." This is not a proper description; indeed, it can hardly be said to be a description at all. We are not informed upon what street the lot is situate, nor of its front or depth. All we know is that it is in the Ninth ward. The reference to the map does not locate it. There is no pretence that it is a public, recorded map. It is only a map on file in the office of the city clerk. Aside from the rights of the defendant, such looseness of practice cannot fail to produce hopeless confusion in regard to titles. The claim was properly stricken off.

Judgment affirmed.