331 A.2d 467
Margaret McMONAGLE, Appellant,

v.

ALLSTATE INSURANCE COMPANY, a Corporation.

Supreme Court of Pennsylvania.

Argued Oct. 3, 1974.

Decided Jan. 27, 1975.

Rehearing Denied March 4, 1975.

Joseph M. Zoffer, Martino, Ferris & Zoffer, Pittsburgh, for appellant.

Robert S. Grigsby, Thomas A. Matis, Thomson, Rhodes & Grigsby, Pittsburgh, for appellee.

Howard A. Specter, Litman, Litman, Harris & Specter, P. A., Pittsburgh, for amicus curiae.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This action was commenced by plaintiff on behalf of herself and all others similarly situated. The trial court determined that the action could not be maintained as a class action but entered judgment for plaintiff individually. 122 Pitt.L.J. 107 (Pa.C.P.1973). Plaintiff appealed the adverse ruling on the class action. A divided Superior Court affirmed. 227 Pa.Super. 205, 324 A.2d 414 (1974). We allowed this appeal [1] because of the importance of the question presented.[2] We affirm.

[1] Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1974).

[2] The dearth of Pennsylvania appellate cases dealing with the propriety of class actions is striking. The following list includes all such cases since the adoption of Pa.R.Civ.P. No. 2230, 12 P.S. Appendix, in 1940: *Buchanan v. Brentwood Fed.Sav. & Loan Ass'n,* 457 Pa. 135, 320 A.2d 117, 130–131 (1974); *Luitweiler v. Norchester Corp.,* 456 Pa. 530, 319 A.2d 899, 902–903 (1974); *Penn Galvanizing Co. v. Philadelphia,* 388 Pa. 370, 376–378, 130 A.2d 511, 514–515 (1957); *Korona v. Bensalem Twp.,* 385 Pa. 283, 287, 122 A.2d 688, 689–690 (1957); *Garnet Valley School Dist. v. Hanlon,* 15 Pa.Cmwlth. 476, 327 A.2d 215, 218 (1974); *Frank v. Zoning Hearing Bd.,* 6 Pa.Cmwlth. 462, 467–468, 296 A.2d 300, 303 (1972). In addition, *Oas v. Commonwealth,* 8 Pa.Cmwlth. 118, 124–127, 301 A.2d 93, 96–98 (1973), was decided by the Commonwealth Court in its capacity as a trial court. For an extensive collection of Pennsylvania trial court cases dealing with class actions, see DelleDonne & Van Horn, Pennsylvania Class Actions: The Future in Light of Recent Restrictions on Federal Access?, 78 Dick.L.Rev. 460, 497–529 (1974).

The result of this scarcity of authority has been to leave our trial courts with "virtually no guidelines . . . from which an intelligent, orderly determination may be made on the maintenance of a class action suit." *McMonagle v. Allstate Ins.*

**162**

The complex history of this case was well summarized by the trial court:

"The plaintiff, Margaret McMonagle, . . . was the insured under a policy of insurance issued by the defendant, Allstate Insurance Company . . . . The policy of insurance provided coverage, inter alia, for automobile medical payments insurance up to $2,000.00 and uninsured motorist.

"On February 14, 1969, McMonagle was injured while a guest passenger in an uninsured automobile. She incurred medical expense as a result of the accident in the amount of $978.50.

"On December 15, 1971, by letter to Allstate, Mc-Monagle made demand for an arbitration hearing under the uninsured motorist provisions of her policy. In the demand letter, McMonagle listed medical expenses in the amount of $1,086.05 and lost wages in the amount of $180.00. On February 3, 1972, she made a demand for arbitration to the American Arbitration Association. Allstate notified both McMonagle and the American Arbitration Association that no policy of insurance covering McMonagle was in force on . . . the date of the accident. Allstate on May 18, 1972, brought an action in equity . . . to enjoin the arbitration proceeding, alleging that the policy of insurance had lapsed due to non-payment of the premium. McMonagle filed preliminary objections to the complaint contending the matter was exclusively for

Co., 227 Pa.Super. 205, 219, 324 A.2d 414, 421 (1974) (Hoffman, J., dissenting).

In large measure, this scarcity of authority results from the preference of plaintiffs in class actions for the federal courts. Recently, however, access to the federal courts has been curtailed, especially for those whose individual claims are small. *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L. Ed.2d 511 (1973); *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); cf. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Consequently, the volume of such actions in our courts will doubtless increase markedly.

arbitration pursuant to the terms of the policy of insurance. The preliminary objection was overruled . . . . McMonagle filed an appeal to the Supreme Court . . . which . . . reversed . . . and dismissed the complaint. [*Allstate Insurance Co. v. McMonagle*, 449 Pa. 362, 296 A.2d 738 (1972).]

"On February 21, 1973, an arbitration hearing was held pursuant to the uninsured motorist provisions of the policy of insurance and on *April 2, 1973,* an award was made in favor of McMonagle in the amount of $3,314.50. Allstate promptly paid the award.

"On *April 6, 1973,* McMonagle by letter to Allstate made demand upon Allstate for her medical bills under the automobile medical payments provision of the policy in the amount of $1,005.85. On *April 9, 1973,* McMonagle by letter to Allstate, referring to a phone conversation previously had, submitted copies of all medical bills totaling $1,005.85.

"On *April 11, 1973,* McMonagle filed the within class action which was served on Allstate on *April 16, 1973.*

"On *April 12, 1973,* Allstate issued its check to McMonagle in the amount of $1,005.85, and deposited the same in the United States mail.

"On *April 17, 1973,* the envelope containing the aforesaid check of Allstate was marked refused by McMonagle and was returned to Allstate.

"McMonagle filed this action as a class action alleging that she brought the action on behalf of herself and as representative of a class of Allstate policyholders in the Commonwealth of Pennsylvania to receive money due them wherein Allstate has in fact failed to make payment under the automobile medical payments provisions of its policy after an award is made under the uninsured motorist provisions of its policy in favor of the insured, either by deducting and thus diluting the payment due and owing under the medical payments

provisions from the amount of the uninsured motorist award, or by failing to pay the medical expenses due and owing under the medical payments provision of its policy at all, subsequent to the uninsured motorist award . . . ."

After completion of some discovery, cross-motions for summary judgment were filed, Allstate conceding, for purposes of this action, its liability to McMonagle. The court held that the case should not proceed as a class action because, inter alia, individual actions were a superior manner of resolving the dispute.

McMonagle appealed the determination that this was not a proper class action. The Superior Court affirmed, two judges taking the position that it was a proper class action, one judge concluding that affirmance was proper regardless of whether this was a proper class action and one judge concurring in the result without opinion.

The maintenance of a class action in our courts is governed by Pa.R.Civ.P. 2230(a), which provides:

"If persons constituting a class are so numerous as to make it impracticable to join all as parties, any one or more of them who will adequately represent the interest of all may sue or be sued on behalf of all, but the judgment entered in such action shall not impose personal liability upon anyone not a party thereto."

This rule was derived from Fed.R.Civ.P. 23(a) as it existed when Rule 2230 was adopted (Original Rule 23).[3]

**3.** Original Rule 23(a) provided:
"*Representation.* If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

Rule 23 was amended in 1966 to take its present form (Amended Rule 23).[4] The obvious relevance of federal practice under Rule 23 was made explicit by a drafter's note to Rule 2230(a):

> "This subdivision adopts the practice under Pennsylvania Equity Rule 16 and F.R.C.P. 23(a) . . . in providing for a class suit where the members of a class

(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

4. The portions of Amended Rule 23 which determine whether a class action may be maintained provide:

"(a) *Prerequisites To A Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

are so numerous as to make it impractical to join all parties."

Before passing on the propriety for the asserted class action in this case, we shall first consider the contention, accepted by Judge Cercone in the Superior Court, that affirmance is required regardless of the propriety of the class action. This position rests on the drafter's note "adopting" the practice under Original Rule 23(a). Consequently, it is argued, Rule 2230 incorporated the threefold categorization of class actions embodied in Original Rule 23—the so-called true, hybrid, and spurious class actions.[5] Under that categorization, this class action is clearly of the sort denoted "spurious," and any judgment will be effective only as to those parties actually before the court.[6] Because McMonagle was the only member of the purported class before the court at the time judgment was rendered, only she would be affected even if the class were proper. Thus, no consequences would flow from a determination that the class action was properly brought and affirmance is proper.

We cannot accept this argument. The fatal flaw is in the initial premise. The threefold categorization rested on language conspicuously absent from our Rule 2230, which is otherwise almost identical to Original Rule

---

5. The three categories were derived from language in Original Rule 23(a) classifying class actions according to whether
"the character of the right sought to be enforced for or against the class is
(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;
(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or
(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."
The three categories were denoted "true," "hybrid," and "spurious," respectively.

6. 3B J. W. Moore, Federal Practice ¶ 23.11[3] (2d ed. 1974) and cases there cited.

23(a).[7] Clearly, the drafters of Rule 2230 wisely foresaw that the distinctions drawn by this categorization would be unworkable and intentionally omitted them from Rule 2230. Their wisdom was confirmed when Rule 23 was amended to eliminate these distinctions because they had "proved obscure and uncertain" and failed to "provide an adequate guide to the proper extent of the judgments in class actions." [8]

We think it is clear that determination of sensitive questions regarding the maintenance of class actions requires more than ritual incantation of formulae derived from discarded federal rules.

> "[W]e are not bound by [the criteria that have in the past been applied by the federal courts]. Our rule is more general and thus less restrictive than the Federal rule. Where we find cases decided under the Federal Rule persuasive . . . we may follow them, but if we do not find them persuasive, we are free to go in a different direction. . . . The experience with class actions in the Federal Courts has been difficult. Hopefully we may benefit from it, and do better."

*McMonagle v. Allstate Insurance Co.*, 227 Pa.Super. 205, 237, 324 A.2d 414, 429 (1974) (Spaeth, J., dissenting).

▮▮ We therefore find it necessary to determine the propriety of the class action and conclude that this is not a proper class action because McMonagle is not a member of the class she purports to represent. Rule 2230 allows suit only by "one or more" of the "persons constituting a class." Class membership is also required of the representative by both Original and Amended Rule 23(a).[9]

---

7. Compare Rule 2230 with Original Rule 23(a), set forth in note 3 supra.

8. Amendments to Rules of Civil Procedure, Advisory Committee's Note to Rule 23, 39 F.R.D. 69, 98 (1966). See 7 C.A. Wright & A. R. Miller, Federal Practice & Procedure § 1752, at 511–13 (1972).

9. "If persons constituting a class . . ., such of *them* . . . may . . . ." Original Rule 23(a) (emphasis

The essence of the injury allegedly suffered by the class members is "dilution" of payments under one coverage of the policy due to payments previously made under another coverage. McMonagle never suffered such "dilution." McMonagle's claim under the uninsured motorist coverage was paid promptly after the arbitration award of April 2, 1973. No claim predicated explicitly upon the medical payments coverage of the policy was made until April 6, 1973, and Allstate issued a check in payment of that claim on April 12, 1973, four days before it learned of this action. It is argued, however, that the listing of medical expenses in the claim of December 15, 1971 (explicitly based on the uninsured motorist coverage) was a sufficient claim under the medical payments coverage which Allstate, by its failure to pay, denied. This argument misses the point. Allstate's denial was based on the contention that McMonagle's policy had lapsed for non-payment of premiums and not on any prior payment of benefits, under a different coverage of the policy. Consequently, there was no "dilution" of the sort allegedly suffered by the members of the class.

We emphasize that this is not a case where the defendant, after the commencement of a class action seeks to avoid a class adjudication by satisfying the representative's individual claim,[10] nor one where simple passage of

added). "One or more *members* of a class may . . . ." Amended Rule 23(a) (emphasis added). See 3B J. Moore, Federal Practice ¶ 23.04, at 23–254 (2d ed. 1974); 7 C. A. Wright & A. R. Miller, Federal Practice & Procedure § 1761 (1972).

10. See, e. g., *Smith v. YMCA*, 462 F.2d 634 (5th Cir. 1972); *Jenkins v. United Gas Corp.*, 400 F.2d 28 (5th Cir. 1968); *Cypress v. Newport News Gen. Hosp.*, 375 F.2d 648 (4th Cir. 1967); *Singleton v. Bd. of Comm'rs*, 356 F.2d 771 (5th Cir. 1966); *Buckner v. County Bd.*, 332 F.2d 452 (4th Cir. 1964); *Thomas v. Clarke*, 54 F.R.D. 245 (D.Minn.1971); *Gatling v. Butler*, 52 F.R.D. 389 (D. Conn.1971); *Vaughn v. Bower*, 313 F.Supp. 37 (D.Ariz.), aff'd mem., 400 U.S. 884, 91 S.Ct. 139, 27 L.Ed.2d 129 (1970); *Adens v. Sailer*, 312 F.Supp. 923 (E.D.Pa.1970); *La Sala v. American Sav. & Loan Ass'n*, 5 Cal.3d 864, 97 Cal.Rptr. 849, 489 P.2d 1113 (1971). See generally Kates & Barker, Mootness in Judicial Proceedings: Toward a Coherent Theory, 62 Calif.L.Rev. 1385, 1394–97 (1974);

time has caused the individual claim of a proper class representative to become moot.[11] We hold only that one who has never been subjected to or threatened with subjection to the challenged conduct may not maintain a class action on behalf of those who allegedly were victimized by that conduct.

The order of the Superior Court affirming the judgment of the court of common pleas is affirmed.

POMEROY and NIX, JJ., concur in the result.

Bledsoe, Mootness and Standing in Class Actions, 1 Fla.St.U.L. Rev. 430 (1973).

11. See, e. g., *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 556–59, 42 L.Ed.2d 532 (1975); *Roe v. Wade*, 410 U.S. 113, 124–25, 93 S.Ct. 705, 712–13, 35 L.Ed.2d 147 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 998 n. 2, 31 L.Ed.2d 274 (1974); see generally *Kates & Barker*, supra note 10; *Bledsoe*, supra note 10.